Price, J.
The record shows that the circuit court reversed the judgment of the court of common pleas for “error in overruling motion of plaintiff in error for judgment in its favor upon the pleadings, there being no other error apparent in the record to the prejudice of the plaintiff in error. And proceeding to render the judgment the court of common pleas should have rendered, it is considered thatrthe petition and proceeding brought by the said iEmma Rheinheimer, the de *372 fendant in error, be and the same is dismissed.” A judgment for costs was rendered against her. A most careful search of the record discloses no such motion, and it appears from the briefs of opposing counsel that no motion was ever made in the court of common pleas for judgment on the pleadings, and there is no entry found in the record that the latter court ever heard or passed on such a motion.
Speaking on the subject, counsel for plaintiff in error say in their brief: “No motion for judgment on the pleadings was made, but what is substantially equivalent, defendant in error objected to any testimony being given by the plaintiff in error.” We think the learned counsel concede entirely too much, for the right to judgment on the pleadings must arise from a consideration of all the pleadings, it not being infrequent that the averments of an answer may help out a defective petition. And so may a reply contain facts which will aid a weak answer. To justify a judgment on the pleadings, it must be found that taking all their averments as they stand, they present simply a question of law. The objection to the introduction of any evidence by the plaintiff may be based on the ground that the petition does not state a cause of action, and in this respect differs widely from a motion for judgment on the pleadings. Commenting on the above condition of the record before us, counsel for defendant in error, in their brief, copy the same entry of the circuit court, and proceed at once to say that, “in' the trial court a number of exceptions were taken by the defendant in error to the rulings of the court upon the ad *373 mission and exclusion of evidence, and to the charge of the court. In the exercise of caution the defendant in error, therefore, filed in this court a cross-petition in error and a record containing a complete record of the proceedings in this case. The cross-petition in error asked this court to consider the alleged errors of the trial court, if this court should be of opinion that the circuit court, erred in giving judgment upon the pleadings for defendant in error.”
We regard it as a fair inference from this statement, that counsel making it as the representative of the insurance company, do not now claim that the trial- court ever had before it, or passed upon a motion for judgment on the pleadings. Nor did the petition in error filed in the circuit court assign as error any ruling on such motion. It follows, therefore, that the circuit court'erred in reversing the judgment of the court of common pleas on the only ground stated in its judgment entry.
But counsel for the defendant in error say they filed a cross-petition in error, pointing out other grounds of error, for which the circuit court should have reversed the judgment of the common pleas. That was an unnecessary proceeding, as often ruled by this court, and at an early stage of the case in this court, and on motion of the plaintiff in error, the cross-petition in error was stricken from the files. It has long been a rule of practice here, that if there are other errors in the rec’ord brought here from the circuit court, for which that court should have reversed, they may be .pointed out, and this court is not necessarily confined to those found by that court.
*374 Having cleared the way for a proper review of what is before us, we find that in the beginning of the trial the insurance company “objected to the introduction of any evidence by the plaintiff under the petition.” This objection was overruled and defendant excepted. This ruling was assigned for error in the circuit court without avail. Should the circuit court have held that ruling to be error?
The statement of this case contains very liberal quotations from the petition, and, in fact, its vital averments are set out, omitting the formal statements of the capacity in which the plaintiff sues and the- defendant is being sued. The plaintiff did not attach to her petition a copy of the insurance policy, but did set out the obligatory part thereof on which she founded her claim, such as the promises contained in the policy; the payment and acceptance of the two premiums. Enough is alleged to show that the insurance was alive and otherwise valid at the death of her husband; that through external and violent means the deceased sustained an injury which caused his death a short time thereafter; and going more into detail, it was alleged that on the 30th day of December, 1900, the deceased accidentally scratched the index finger of his left hand, leaving a visible mark, thereby then and there introducing into his system blood poisoning, which caused his death on the 3d day of January, 1901. Then, taking care to meet an anticipated question as to the cause of death, it is alleged that, “said death did not result ‘wholly or partly, directly or indirectly, from any of the causes excepted in said policy, but wholly and directly from said accidental scratching of said *375 hand.” There was no motion to make the averments' of the petition definite and certain as to the condition of the insured between the sustaining what appeared to be a very slight injury and the hour of his death, and we can not assume, while passing on the sufficiency of the petition, that some or all of its averments are shaded in doubt, or are partly if not altogether untrue. It is said that the scratch of the finger was accidental; that it left a visible mark as such injury, then and there introducing blood poisoning into the system. The introducing of the poison is charged to have been simultaneous or next in time to the injury. The inoculating of the poison was the first sequence of the accident. The accidental injury is alleged to have been the sole and proximate cause of the death. We are not able to say, as a matter of law, that the facts so averred were so far improbable or impossible that we should ignore the positive terms of the pleading. Moreover, the positive averment as to the cause of death is followed by a denial that jt resulted wholly or partly, directly or indirectly, from any causes excepted in the policy.
We are of opinion that the petition states a cause of action under which the plaintiff was entitled to introduce her competent evidence.
There was some controversy over the introduction of testimony, but it did not reach a serious stage. The first, and perhaps the most important question made by the plaintiff in error, relates to some statements elicited from Marcus Feder, who was a son-in-law of deceased, and then resided in part of the same house. After testifying that he *376 was at home that evening (December 30), he said it was about nine o’clock, and he saw Mr. Rheinheimer standing under the chandelier in his sitting room squéezing out blood from the finger. He says there was a tear of the finger where the blood came out; the extent of the tear being about a quarter of an inch. The witness' was then asked: “Now, what, if anything', did he say to you when you saw him squeezing the blood out of his finger under the chandelier ?” Counsel for defendant company objected, and after full argument, the court overruled the objection, and exception was reserved. The witness answered: “ T hurt my finger locking up the door,’ ” or “ 'locking up the house.’ ” The witness then stated that he went into the bath or toilet room and procured a clean linen rag and helped- him dress the wound. The spirit of the objection to the question and answer is, that the statement of Rheinheimer as to how he sustained the injury was not part of the res gestae; on the contrary, it was hearsay in this case.
The courts have found it difficult to establish a satisfactor}'- line between what statements are considered part of the res gestae and what are not. The decisions are not in harmony on the subject, some courts holding to - a more liberal rule than that recognized by former adjudications of this court, and if it were necessary to go into the subject anew in this case, the discussion might be of value; but if we take it for granted here (but we do not decide) that the statement was not a part of the res gestae as defined by óur former rulings, it does not follow that the error of its admission is so far prejudicial “that the judgment *377 of the trial court should be reversed. This is true as to the present question, because, aside from said statement, there is much uncontradicted evidence as to the nature and probable cause of the injury to the finger, from which the deadly inflammation proceeded. Early in the record it appears that Mrs. Addie Feder, wife of Marcus Feder, was a witness. She is a daughter of Mr. Rheinheimer, deceased, and resided with her husband in a part of the house. She testified that Dr. Peskind was called to see her father on New Year’s morning, and she was asked: “When, if at any time, did you see any cut or hurt or anything of that kind on his hand * * *?” She apswered: “There was a black mark traced down through the finger, and I saw that.” Other answers were made concerning the description of the streak on the arm and finger, and she said: “It was quite large and led down in a streak from here (indicating). The doctor drew my attention to it, and I saw it leading from the finger up to that discolored spot.” Again, she was asked: “Where was this scratch or whatever it may be that you refer to, on the finger?” Ans. “It was on the forefinger. * * * As near as I can remember, it started from somewhere the middle of the finger,” etc. Again she says: “It was rather a deep scratch. Oh, I should judge from a quarter of an inch perhaps, or a little more than that.”
In the testimony of Dr. Peskind, the first physician called, and on the second day after the alleged injury, he states concerning the injury to the finger: “There was a small scooped out wound on the second or third phalange — the second or third *378 section of the finger of the right hand — a red streak, and that ran to the back of his hand and on the inside running up to his armpit. These infected streaks always indicate- poisons being carried from the surface into the general circulation.” Marcus Feder testified that his father-in-law was locking' up the house just preceding the act of standing under the chandelier and squeezing the blood from the torn finger.
In another part of his testimony Dr. Peskind states: “I found the finger had a scooped out wound about a quarter or three-eights of an inch long. The wound looked scooped out, slightly excoriated and a little water on the surface * *
The wound was fresh. It had not been seen before the deceased stood under the chandelier and squeezed the blood from it. He had just been engaged-in locking up the house. In the presence of all of these facts it was immaterial that he said that he hurt his finger, “locking up the door, or locking up the house.” Without such statement there was evidence strongly tending to show that he received the cut or scratch at the time and in the manner claimed, and there is no evidence to the contrary. There was no contest of these facts in the evidence, and the case does not rest on the declaration of the deceased. It is not suspected that the injury was self-inflicted. Some other questions arose during the introduction of the evidence, but none, of sufficient importance to demand special mention..
The defendant below set out in its answer the clause of the policy which limits its liability, and relying on that clause as a defense to the action, *379 introduced evidence tending to prove that blood poisoning caused the death, and not the injury to the finger, and other evidence tending to show that the policy does not cover the death or loss made the basis of the action. That clause reads: “This insurance does not cover in event of accident or death, loss of limb or sight, or disability resulting wholly or partly, directly or indirectly, from bodily or mental infirmity, or disease in any form, proximate or contributory, as a primary, secondary, or final cause of accident, injury, disease or death; nor does it cover death or disability due to hernia existing prior or subsequent to the issue of this policy,” etc.
Believing that the evidence brought the case within the terms of the above exception, the insurance company requested twenty-seven instructions, the first of which was to find a verdict* for the defendant. This was not given. Some of the others were given and others refused. As the record stands, it was not asked that these of any of them should be given before argument, and if the substance of the proper instructions is contained in the general charge, there is no ground for complaint. But counsel specially allege error in refusing to give the 7th, 9th, nth, 17th and 18th requests. As to two of these requests, it seems they might be refused because the facts in the case did not call for or permit of such rules. And when we look to requests 2, 3, 4, 5_ and 6, which were given, and to the general charge, we conclude that the law was submitted to the jury in such form ánd language that the issues could be clearly understood by the jury. In the 2d re *380 quest the jury were told' that a preponderance of the evidence must show “that the decedent, Elias Rheinheimer, came to his death from bodily injuries effected through external, violent and accidental means which, independently of all other causes, produced the death of the said Elias Rheinheimer,” etc. In the 3d the jury was instructed that they must be convinced by a preponderance of the evidence “that the death of Elias Rheinheimer resulted solely from bodily injuries effected through external, violent and accidental means on or about the 30th day of December, 1900, and that the death of the said Elias Rheinheimer resulted solely from such bodily injuries within ninety days of the said 30th day of December, 1900.” In the 4th 'instruction requested and given the jury was told that “if the evidence in the case convinces you that the death of Elias Rheinheimer was due to disease of any kind, the plaintiff can not recover in this case.” And in the 5th the jury was told that in order for her to recover, “the plaintiff must show by a preponderance of the evidence that the death of Elias Rheinheimer was due to and effected through external, violent and accidental means, which, independently of all other causes, caused the death of the said Elias Rheinheimer, and so caused the death * * * solely from such injuries within ninety days,” etc. This is not all, for in the 6th instruction given, the court said: “Unless the plaintiff has shown by a preponderance of the evidence in this case that the death of Elias Rheinheimer, the decedent, was the direct, proximate result of external, violent and accidental means, there can be no recovery,” etc.
*381 Beyond doubt, these instructions cover the terms of all the other proper requests which were not given in terms, and they lack only the addition of the supposed saving words “wholly, partly, directly or indirectly from bodily infirmity or disease in any form which was a proximate, contributory, or a secondary, or a final cause of such accident and injury.” These words are literally taken from the clause of the policy quoted, and we know of no rule that requires the- court to charge a *proposition as law, which is contained in the technical language of the contract. The court, in charges given, had stripped from the real issue some of these qualifying words which to the jury might seem mysterious, and which might even confound them, and gave their purport and meaning in clear and simple terms. For -if the accident was the sole cause of death, and it was so caused independently of- any other cause, then it did not result partly from any other cause; and if the accident was the sole and proximate cause of death, then it did not result, directly or indirectly, from any other cause. And if the accident was the sole and proximate cause, it was the primary, and not the secondary or contributory cause. It seems to us the above special instructions given at the defendant’s request, and the general charge, covered the terms of the exception in the policy, and the court sufficiently and correctly construed the policy. The qualifying words, above noted, were contained, in whole or in part, in several of the rejected instructions, and the same comment applies to them. We will further refer to the general charge and the rejected instructions when *382 we come to consider the special- verdict returned by the jury.
On the whole case, as well as to the sufficiency of the- petition, counsel have cited many authorities pro and con. We have not space to give our views of them separately. They will appear in the official report of this case in their proper order.
But the insurance company cite and seem to rely on Aetna Life Ins. Co. v. Dorney, 68 Ohio St., 151, as controlling the case at bar. The facts of the cases are so widely different that we are unable to make the application attempted by counsel. The vital conditions presented by one case are the reverse of those presented in the other. In the Dorney case, supra, there was no visible mark of injury. At some period prior to his death an ulcer formed in his stomach which gradually made a hole through it. Nature had patched by growing a fold of the omentum or covering of the bowels over the opening and closing it as by a patch. By the strain, jar, or wrench which Dorney sustained in helping to carry a stone, the patch was torn off, so that the contents of the stomach escaped into the abdomen and death resulted shortly thereafter. This condition of the stomach was set out in the petition and was a conceded fact of the case. There was a well-defined pre-existing physical infirmity in the stomach, only partly healed by nature, but its work gave way with a slight jolt of the body and death ensued — not from the jolt or strain but from the ruptured stomach. The perforated stomach was the pre-disposing cause of death and the motion or jar in carrying the stone, only the incident, the *383 transpiring of .which precipitated the results of the defective organ.
In the case at bar it appears that Rheinheimer, prior to the injury to the finger, enjoyed fairly good health, and for a man of his years was active in business. It is not shown that he had any organic disease, or any other kind of disease. The scratch of the finger preceded all, as the physical injury, and its mark was visible. Its relation, whether a proximate, direct and sole cause of the death, became a question for the jury. We still approve of the doctrine of the Dorney case, but it is not in conflict with our conclusions in this investigation.
Complaint is made of the special verdict, as to the drafting and submitting of the same to the jury, and also of the court receiving the verdict and rendering judgment upon it. This verdict appears in our statement of the case. It exhibits an ability and conciseness not common to the ordinary petit juror. How did it come into existence, and into court? On page 244 of printed record, it appears that counsel for the insurance company asked the court to direct the jury to return a special verdict. The request is as follows: “We ask the court to instruct the jury to return a special verdict in writing in this case, upon all the issues raised by the pleadings.” The court: “Under what provisions of the law do you make that request?” Answer: “Section 5201.” The jury was then charged, at the close of which the subject of the special verdict was taken up. The court suggested that it would aid the jury if opposing counsel would draft an outline of such verdict. *384 Counsel for the plaintiff submitted to the court a form" of special verdict drawn by them, and requested the court to submit it to the jury, to be filled out in returning its verdict, to conform to the request of counsel for the defendant. Counsel for the defendant then and there objected to the form of the verdict as prepared by the counsel for the plaintiff going to the jury room. This objection was overruled, but counsel for defendant declined to prepare, or assist in preparing any form or outline for a special verdict. The court said to the jury: “The defendant in this case has requested the court to direct you to give a special verdict in writing upon all the issues in this case, and it is the duty of the court to so instruct you, and I do now instruct you to return a special verdict in writing upon all the issues in this case, and I have defined to you, gentlemen of the jury, at length in my general charge, what, the issues in this case are, and I will not endeavor now to make a repetition of the charge. It will 'be your duty to select your foreman in the usual manner and to reduce to writing your finding upon all the. issues in. this case,” etc. But the court does not stop here, but proceeds to say: “The plaintiff in this case, gentlemen of the jury, has prepared a special verdict, which upon her theory of the case you may find, if you see fit so to find. You are not bound to find any of the facts, or to find any of the findings that are shown in this special verdict that will be submitted to you. As to every statement in it you are at liberty to find different. You are at liberty to disregard the paper altogether, and it is your duty to disregard it if you *385 can’t concur in its findings, and prepare one of your own entirely different from this * * *. This is submitted to you merely as a form and merely to guide you in so far as the issues are concerned from the standpoint of the plaintiff.”
This is the record of a rather unusual course of practice, although it has been common in the past to ask for special verdicts, and the right, to do so is clearly provided in Section 5201, Revised Statutes, which is: “In all actions, the jury, unless otherwise directed by the court, may in its discretion render either a general or special verdict; but the court shall, at the request of either party, direct them to give a special verdict in writing upon all or any of the issues,” etc. Here it was requested that the jury return a special verdict on all the issues, and it was so done. The court had no discretion in the matter, nor had the jury any discretion when the demand was made for a special verdict in writing. It so happened, as we presume, that the jury chose to adopt the form submitted as meeting its conclusions from .all the evidence, inasmuch as they asked for .no other form and made no attempt to draft another. The whole proceeding touching the form of the verdict was in open court and in the presence of counsel for both parties, and there is no claim or insinuation that unfair means were used or advantage taken of the situation, and while the practice disclosed here is not common, we see no reason to condemn it in this case. It has always been the practice for the court to draw up and send to the jury forms of general verdicts, and the way was open in this case for counsel for defendant to have *386 "his form of special verdict sent to the jury. There was no such irregularity in the special verdict or in the manner in which it was prepared and returned as will require us to set it aside.
' In the light of this special verdict, it seems that the insurance company has not been prejudiced by the court refusing to give several of the special requests.
Entertaining these views, wé reverse the judgment of the circuit court and affirm that of the common pleas.

Judgment reversed.'

Shauck, C. J., Crew, Spear and Davis, JJ., concur.